# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXEL MONTOYA CHAVARRIA,<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | Case No. 1:26-cv-04275-KES-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS, DENY RESPONDENTS' MOTION TO DISMISS, AND ORDER PETITIONER'S IMMEDIATE RELEASE<br><br>(ECF Nos. 1, 6) |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends granting the petition for writ of habeas corpus, denying Respondents' motion to dismiss, and ordering Petitioner's immediate release.

## I.

## BACKGROUND

Petitioner is a citizen of Guatemala who entered the United States without inspection on or about November 2016. Petitioner established a stable residence in Maryland and has resided with his wife, U.S. citizen son, and three stepchildren since 2021. (ECF No. 1 at 8.[1]) Petitioner held a stable job for the past four years and has no criminal record in the United States. (Id. at 9.)

On January 20, 2026, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") while working at a worksite. Petitioner was taken to a detention facility in Baltimore, Maryland, and transferred to California City Detention Center, where he remains detained. (ECF No. 1 at 10.)

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

On February 12, 2026, Petitioner filed his first federal petition for writ of habeas corpus ("Petition I") in this Court. Petition, Montoya Chavarria v. Chestnut, No. 1:26-cv-01258-KES-EPG (E.D. Cal. Feb. 12, 2026), ECF No. 1. On April 2, 2026, this Court granted Petition I and ordered Respondents to provide Petitioner "with a bond hearing pursuant to 8 U.S.C. § 1226(a) before a neutral decisionmaker within seven (7) days of the date of this Order." Order at 2, Montoya Chavarria, No. 1:26-cv-01258-KES-EPG, ECF No. 14.

On April 8, 2026, Petitioner received a bond hearing before an immigration judge ("IJ"). Thirty-two minutes prior to this hearing, ICE submitted a Form I-213 that incorrectly stated that Petitioner does not have children, was voluntarily removed under the name Selso Hernandez Lopez in 2000, and was detained during a targeted enforcement operation at a vehicle stop, during which he fled from the scene of the vehicle stop on foot. (ECF No. 1 at 10–11.) The IJ found Petitioner to be a flight risk and denied bond, stating:

> Respondent is a significant flight risk such that no amount of bond or conditions would secure his future court appearances. The I-213 indicates that when ICE detained Respondent on January 20, 2026, Respondent attempted to evade arrest and flee. While Respondent attests that he did not flee, his assertions alone are not sufficient to meet his burden. Respondent did not submit objective evidence to corroborate his statements that he did not attempt to evade ICE officers. The I-213 further notes that on July 30, 2000, Respondent was subject to voluntary removal under a different name of Selso Hernandez Lopez. Respondent presented no evidence that he did not use a different name. While Respondent has 4 minor children in the U.S., Respondent has no immediate family members from which he could derive status or have a visa immediately available. Respondent has been in the United States for over 10 years, has been employed, and lived in Maryland. However, he entered the United States without inspection. Although Respondent seeks cancellation of removal for nonpermanent resident, the likelihood of success of his relief is speculative. Matter of R-A-V-P-, 27 I&N Dec. 803 (BIA 2020) (holding that although an alien had a pending application for asylum, he was a flight risk given that he had no family, employment, or community ties and no probable path to obtain lawful status so as to warrant his release on bond).

(ECF No. 1-8 at 2.)

On May 14, 2026, Petitioner filed a second motion for custody redetermination with the IJ and submitted evidence rebutting the incorrect info in the Form I-213, such as letters from his employer regarding Petitioner's arrest and birth certificates for his United States citizen child.

Petitioner also explained, through counsel, that he would have only been three years old in 2000, thus rebutting the Form I-213's assertion that he was voluntarily removed under the name "Selso Hernandez Lopez" at that time. (ECF No. 1 at 11–12.) On May 28, 2026, the IJ denied Petitioner's bond request, stating:

> This Court held a bond hearing on April 8, 2026, at the direction of the District Court. This Court does not have jurisdiction to hold another bond hearing for Respondent. Respondent is detained in the Eastern District of California. On March 6, 2026, the Ninth Circuit in Maldonado Bautista v. DHS, No. 26- 1044, Dkt. 5.1 (9th Cir. Mar. 6, 2026), stayed the district court's decision vacating Matter of Yajure Hurtado. The record contains no evidence that Respondent has been lawfully admitted into the United States. Pursuant to INA § 235(a)(1), an alien present in the United States without admission is deemed an "applicant for admission" and is subject to mandatory detention under INA § 235(b)(2)(A). The Board has expressly held that Immigration Judges lack jurisdiction to consider or grant bond to such individuals. Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025).

(ECF No. 1-9 at 2.)

On June 4, 2026, Petitioner filed the instant petition for writ of habeas corpus ("Petition II"), asserting the following claims for relief: (1) unlawful denial of bond hearing, in violation of 8 U.S.C. § 1226(a); (2) continued detention under 8 U.S.C. § 1225(b)(2), in violation of due process; and (3) unconstitutional bond hearing, in violation of due process. (ECF No. 1 at 12–18.) On June 5, 2026, Respondents filed a motion to dismiss, and Petitioner filed an opposition to the motion to dismiss and reply in support of the petition on June 10, 2026. (ECF Nos. 6, 7.)

## II.

## DISCUSSION

### A. Successive Petition

To the extent Respondents argue that Petition II is successive and should be dismissed, (ECF No. 6 at 2), the Court finds such an argument unpersuasive. The common law "doctrine of abuse of the writ generally 'forbids the reconsideration of claims that were or could have been raised in a prior habeas petition.'" Alaimalo v. United States, 645 F.3d 1042, 1049 (9th Cir. 2011) (citation omitted). A "successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive

petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." Alaimalo, 645 F.3d at 1049.

Although Petitioner challenges his detention under 8 U.S.C. § 1225(b)(2) and denial of bond hearing in both petitions, Petition II's challenge is based upon events that occurred after Petition I—namely, the IJ's May 28, 2026 bond request denial based on mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A) after this Court granted Petition I and in contravention of this Court's previous conclusion that Petitioner is not subject to mandatory detention under § 1225(b). Petition II also asserts that the bond hearing Petitioner received pursuant to this Court's order was constitutionally inadequate, which could not have been raised in Petition I.

Accordingly, the undersigned recommends finding that dismissal is not warranted under the abuse of writ doctrine.

**B. Exhaustion**

Respondents argue that the petition should be dismissed because Petitioner failed to exhaust his administrative remedies. (ECF No. 6 at 1–2.) "As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (citations omitted). However, because it is not a jurisdictional prerequisite, exhaustion can be waived. Id. (citations omitted). "Courts may require prudential exhaustion if":

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citations omitted)). "Nonetheless, even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

Here, the undersigned recommends waiving the prudential exhaustion requirement here. "[W]here the agency's position on the question at issue 'appears already set,' and it is 'very likely' what the result of recourse to administrative remedies would be, such recourse would be futile and is not required." El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev., 959 F.2d 742, 747 (9th Cir. 1991) (quoting SAIF Corp./Oregon Ship v. Johnson, 908 F.2d 1434, 1441 (9th Cir. 1990)). "The Court joins the multitude of district courts to consider this issue recently in the context of habeas petitions filed by immigrant detainees and finds 'pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens detained in the United States without admission are "seeking admission" for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained.'" Cerro Huerta v. Bondi, No. 1:25-cv-00941-JLT-HBK (HC), 2026 WL 74152, at *3 (E.D. Cal. Jan. 9, 2026) (quoting Singh v. Andrews, No. 1:25-cv-01543-DCJ-SCR, 2025 WL 3523057, at *2 (E.D. Cal. Dec. 9, 2025)) (collecting cases). See Prem S. v. Warden of Golden State Annex Det. Facility, No. 1:25-cv-01869-TLN-SCR, 2025 WL 3724854, at *2 (E.D. Cal. Dec. 24, 2025) ("fundamentally disagree[ing]" with government's exhaustion argument because "it is clear any immigration judge and the BIA would accept § 1225(b)(2) applies to Petitioner given the BIA's recent decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which upheld the legal interpretation of § 1225(b)(2) that Respondents put forth" and therefore declining to "subject Petitioner to a fruitless exercise where this [is] a predetermined outcome"); Estrada-Samayoa v. Cruz, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *8 (E.D. Cal. Nov. 24, 2025) ("The Court agrees that waiver of petitioner's exhaustion of administrative remedies is appropriate. Petitioner has demonstrated that presentation of his claims to the BIA would be futile in light of the BIA's decision in *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 20025).").

**C. Statutory Authority for Petitioner's Detention**

This Court previously concluded:

> "The various legal arguments relied upon by Respondents to support this assertion [that Petitioner's detention is mandatory under 1225(b) while his removal proceedings are pending] have been rejected by this Court in other proceedings." J.E.H.G. v. Chestnut, No. 1:25-cv-01673- JLT SKO, 2025 WL 3523108, at *9

> (E.D. Cal. Dec. 9, 2025). See Valencia v. Chestnut, No. 1:25-cv-01550 WBS JDP, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (noting that "[h]ere in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for admission,'" recognizing "[o]ther district courts have also reached the result that Section 1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens already residing in the United States," and collecting cases).

Montoya Chavarria v. Chestnut, No. 1:26-cv-01258-KES-EPG-HC, 2026 WL 698896, at *4 (E.D. Cal. Mar. 12, 2026), report and recommendation adopted, 2026 WL 905257 (E.D. Cal. Apr. 2, 2026). Further, the Ninth Circuit subsequently rejected the government's similar arguments and held that U.S.C. § 1226(a) applies to noncitizens in Petitioner's circumstances. Rodriguez Vazquez v. Bostock, --- F.4th ----, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026). Accordingly, Petitioner is subject to 8 U.S.C. § 1226(a).

**D. Bond Hearing**

Petitioner argues that his bond hearing did not comply with due process on the following grounds: (1) "ICE submitted Petitioner's Form I-213 only minutes before his April 8, 2026, bond hearing" and thus, Petitioner "did not have an opportunity to review it, let alone submit rebuttal evidence demonstrating the problems with it"; (2) the "IJ then relied on the incorrect information contained in the Form I-213 to find that he is a flight risk"; (3) the "IJ's refusal to allow Petitioner a fair opportunity to rebut the incorrect information in his Form I-213 before (or after) relying on it to deny bond violated Petitioner's due process rights"; (4) the "IJ incorrectly placed the burden on Petitioner to establish his eligibility for bond"; (5) the IJ erroneously "relied on a finding that Petitioner's cancellation of removal application was 'speculative'"; (6) the IJ erroneously relied on an incorrect "finding that Petitioner attempted to 'evade' ICE agents"; and (7) the IJ failed to provide explanations as to why she discounted several factors establishing that Petitioner is not a flight risk. (ECF No. 1 at 15–17.) Respondents do not respond whatsoever to these arguments.

> Generally, in the absence of any red flags, we take the BIA at its word. For example, "[w]hen nothing in the record or the BIA's decision indicates a failure to consider all the evidence," we will rely on the BIA's statement that it properly assessed the entire record. *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). We do

> not require the BIA to "discuss each piece of evidence submitted." *Id.* Similarly, we accept that the BIA "applied the correct legal standard" if the BIA "expressly cited and applied [the relevant caselaw] in rendering its decision." *See Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009). But when there is an indication that something is amiss, like if the BIA "misstat[es] the record" or "fail[s] to mention highly probative or potentially dispositive evidence," we do not credit its use of a "catchall phrase" to the contrary. *Cole*, 659 F.3d at 771-72.

Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024). "[T]he determination whether an alien is 'dangerous' for immigration-detention purposes is a mixed question of law and fact and is reviewable as a 'question of law.'" Id. at 779. "When questions require a close review of agency-found facts, like the 'dangerousness' determination, we review for an abuse of discretion." Id. at 784. "Under an abuse of discretion standard, 'we cannot reweigh evidence ... [but] can [only] determine whether the BIA applied the correct legal standard.'" Id. at 785 (alterations in original) (quoting Konou v. Holder, 750 F.3d 1120, 1127 (9th Cir. 2014)).

> To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent. *Guerra*, 24 I. & N. Dec. at 40. The nine factors an IJ "may" consider "include any or all of the following:"
>
> > (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.
>
> *Id.*

Martinez, 124 F.4th at 783. "An Immigration Judge has broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006). "Any evidence in the record that is probative and specific can be considered." Id. at 40–41.

"There cannot be a correct application of a standard to a set of facts when the facts relied on are incorrect." K.G.M.Q. v. Bondi, No. 2:26-cv-00506-TL, 2026 WL 962609, at *11 (W.D.

Wash. Apr. 9, 2026). "[A]n IJ may permissibly rely on hearsay statements in a Form I-213," but "an I-213 'could not be presumed true when the source of that information was neither a government official nor the subject of the report, or where there was evidence of unreliability.'" Herman v. DHS, No. 5:26-CV-01995-MBK, 2026 WL 1723960, at *9 (C.D. Cal. June 12, 2026) (alteration added) (quoting Hernandez-Guadarrama v. Ashcroft, 394 F.3d 674, 681 (9th Cir. 2005)).

Here, the IJ relied on the Form I-213's account of Petitioner's arrest and assertion that Petitioner was subject to voluntary removal under a different name in concluding that Petitioner is a flight risk. (ECF No. 1-8 at 2.) The record before this Court establishes that there is evidence of the I-213's unreliability with respect to Petitioner being removed under the name Selso Hernandez Lopez in 2000 and being detained during a targeted enforcement operation at a vehicle stop, during which he fled from the scene of the vehicle stop on foot. In a letter to the immigration court, Petitioner's immigration counsel stated: "[Petitioner] never went by the name 'Selso Hernandez Lopez,' nor was he ever voluntarily removed from the United States, as his first entry to the United States was in September 2015, and [Petitioner] was three years old in 2000, making such allegation facially implausible[.]" (ECF No. 1-7 at 4.) There are also witness statements from people at Petitioner's workplace declaring under penalty of perjury that Petitioner was not outside, he was inside the building at his workstation on the processing floor, he was not operating a vehicle, and there was no traffic stop with respect to Petitioner's arrest. (ECF No. 1-5 at 2, 5, 8.) That these documents were not presented to the IJ for her consideration at the April 8, 2026 bond hearing is not the fault of Petitioner given that the Form I-213 was submitted thirty-two minutes before the start of the bond hearing.

Based on the foregoing, the undersigned recommends finding that the April 8, 2026 bond hearing did not comply with due process because "[t]here cannot be a correct application of a standard to a set of facts when the facts relied on are incorrect." K.G.M.Q., 2026 WL 962609, at *11.

\\\

\\\

**E. Appropriate Remedy**

"Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319 (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 (1973)

"Upon determining that an IJ provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release . . . or ordered that Respondents provide petitioner with a new constitutionally adequate bond hearing[.]" Perez Velasquez v. Bondi, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *7 (S.D. Cal. Apr. 16, 2026) (citations omitted) (collecting cases). Here, the undersigned recommends ordering Petitioner's immediate release. Despite this Court's findings to the contrary, Montoya Chavarria, 2026 WL 698896, at *4, Respondents and the immigration court have treated Petitioner as being subject to mandatory detention under § 1225(b) after holding the court-ordered bond hearing. Additionally, in Petitioner's previous case, the undersigned relied on the Form I-213's assertion that "SDDO Aston issued an I-200 Warrant of Arrest, taking MONTOYA into custody," in recommending a bond hearing rather than immediate release. Montoya Chavarria, 2026 WL 698896, at *5. However, as set forth in section II(D), *supra*, the Form I-213's account regarding Petitioner's arrest is incorrect, and Respondents have not provided the Court with a copy of the I-200 Warrant of Arrest. See J.A.C.P. v. Wofford, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025) ("To put it simply, [petitioner's] detention[ ] [is] improper because there is no evidence in the record that [he was] arrested pursuant to a warrant. Since the Government did not comply with the plain language of section 1226(a), [petitioner's] immediate release is justified." (alterations in original) (internal citations and quotation marks omitted)).

\\\

## III.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED;
2. Respondents' motion to dismiss (ECF No. 9) be DENIED;
3. Respondents be enjoined and restrained from detaining Petitioner pursuant to 8 U.S.C. § 1225(b); and
4. Respondents be ordered to immediately release Petitioner.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 19, 2026**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE